**UNITED STATES of America**

v.

**Michael THOMPSON, Jr., Appellant.**

**No. 24940.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 1, 1971.

Decided May 8, 1972.

treaties. To verbalize this hypothesis is to demonstrate its tenousness.

Mr. Rourke J. Sheehan, Rockville, Md. (appointed by this Court), for appellant.

Mr. John S. Ransom, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., at the time the brief was filed, and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee.

Before BAZELON, Chief Judge, and McGOWAN and WILKEY, Circuit Judges.

BAZELON, Chief Judge:

Appellant was convicted of armed robbery, 22 D.C.Code § 3202, and assault with a dangerous weapon, 22 D.C.Code § 502. On appeal he contends that certain testimony relating to the contents of an anonymous telephone call was (1) hearsay so prejudicial that its admission for even the limited purpose of rehabilitation requires reversal under Cannady v. United States;[1] and (2) even if properly admitted only for the purpose of rehabilitation, the failure of the trial court to offer an immediate *sua sponte* limiting instruction requires reversal under Jones v. United States[2] and United States v. McClain.[3] We affirm.

The testimony in question concerned descriptions of the offenders given the police by an anonymous telephone caller shortly after the robbery took place. Throughout the trial, the Court cautioned both counsel that the content of

the telephone call was hearsay and inadmissible.[4] Despite earlier warnings, and immediately following a bench conference dealing in part with this very point,[5] defense counsel chose to go into the content of the telephone call in his examination of one of the investigating officers. In the course of questioning the officer as to his earlier Grand Jury testimony, the following exchange took place:

Q. Did you not just say, officer, not just state, just now, that on that phone call you received descriptions, plural, from the caller on the phone— these are your words—identical or very similar to descriptions furnished you by the complaining witness. Is that correct?

A. That is correct.

(Tr. 195) On cross-examination, the Prosecutor pursued the point:

Q. Was the description given over the phone similar to or different from the description given by [the complaining witness] of the subject who held the knife?

A. It was similar to.

Q. As a result of the description given over the phone and the description given by Mrs. Wright, who was arrested?

A. Michael Thompson, the defendant who is sitting there at the table in the white shirt.

Q. Did anyone else fit the description given by Mrs. Wright or the description over the phone except for Michael Thompson?

A. Very specific description, no—no one else fitted it.

(Tr. 200).[6] It is the admission of this testimony, at all or without a limiting

---

1. 122 U.S.App.D.C. 99, 351 F.2d 796 (1965).

2. 128 U.S.App.D.C. 36, 385 F.2d 296 (1967).

3. 142 U.S.App.D.C. 213, 440 F.2d 241 (1971).

4. Tr. 91–93; tr. 188.

5. Tr. 178–190.

6. The defense theory was to discredit the descriptions given the police by the complaining witness and thereby buttress the defense of mistaken identity. The officer had testified before the Grand Jury that the description of one of the offenders provided by the anonymous telephone cal-

instruction, which appellant contends requires reversal.

■ In our view, a properly narrow application of the doctrine of curative admissibility disposes of both of appellant's contentions. We have recently remarked that "[t]he doctrine of curative admissibility is one dangerously prone to overuse,"[7] and have limited the application of the doctrine to those situations where there arises "the necessity of removing prejudice in the interest of fairness."[8] But within such narrowly limited bounds, the doctrine retains some vitality. Here the prosecution did no more than recharacterize the identical evidence which the defense had initially introduced. No attempt was made to force additional testimony, not first offered by the defense, through such an allegedly "open door."[9] The content of the telephone description already having come in as part of the defendant's case, there was no error in allowing the prosecution to offer the identical evidence in a light favorable to its own theory of the case.

■■ Nor do we find reversible error in the trial judge's failure to issue a sua sponte limiting instruction following the Government's examination of Officer Floyd. At the bench conference preced-

ing defense counsel's examination of that same officer, counsel made clear that his purpose was to impeach the officer by means of the grand jury transcript. Defense counsel did not request a limiting instruction as to the testimony elicited by his own examination, nor did the trial court offer one. Thus, as far as the jury was concerned, the testimony was substantive evidence to be considered for its probative value. In this circumstance we think there was no plain error affecting substantial rights in according the identical testimony similar treatment when offered by the Government. Since the testimony was received for its probative value when offered by the defense, no limiting instruction was required when the identical testimony was offered by the Government.[10]

Accordingly, appellant's conviction is Affirmed.

WILKEY, Circuit Judge:

I concur, except as to the comment on the duty of the trial court to offer immediate *sua sponte* limiting instructions in circumstances not before us in this case. Nothing said here should be taken as expanding the scope of our prior decisions on this point.

ler was so general that numerous individuals in the area met it and therefore no arrests were made. By establishing that the descriptions given by the complaining witness were identical to those receiver over the telephone, defense counsel laid the foundation for the inference he desired the jury to draw: that if one of the descriptions was so general as to have made an arrest impossible, then so too must have been the second description which was alleged to have been that of the defendant. *See* Tr. 187–98; 201; 312–313.

It was this inference that the above quoted prosecution testimony was designed to rebut.

7. United States v. McClain, *supra* note 3, at 216, 440 F.2d at 244; United States v. Winston, 145 U.S.App.D.C. 67, 72, 447 F.2d 1236, 1241 (1971).

8. United States v. Winston, *supra* note 7, at 71, 447 F.2d at 1240; Crawford v. United States, 91 U.S.App.D.C. 234, 237, 198 F.2d 976, 979 (1962).

9. *Compare* United States v. McClain, *supra* note 3; United States v. Winston, *supra* note 7.

10. It would have been preferable, of course, if an immediate limiting instruction had been offered following both defense and prosecution examination. And in situations where the prosecution goes beyond offering the identical testimony elicited by the defense, such an instruction would be required by our decision in Jones v. United States, *supra* note 2, and United States v. McClain *supra* note 3.