**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 22 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LONNIE EUGENE WILSON,

Defendant - Appellant.

No. 97-8024
(D. Ct. No. 96-CR-99)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **ANDERSON**, **TACHA** , and **BALDOCK**, Circuit Judges.

The defendant in this case was found guilty of being a felon in possession

of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). He appeals his

conviction on four different grounds and also makes two challenges to his

sentencing. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

**Background**

The defendant Lonnie Wilson was convicted of a felony in Wyoming state

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

court in 1982. Fourteen years later, on April 10, 1996, local law enforcement officers executed a search warrant, completely unrelated to the crime at issue here, at the defendant's uncle's home on Dillon Avenue in Cheyenne, Wyoming. The defendant, present when the officers arrived, informed detective Dean Jackson and other officers prior to the search that he had a gun in his bedroom in the residence. According to Detective Jackson, the defendant said that the gun was his.

During the search, the police discovered a Browning shotgun in a room with men's clothing and correspondence addressed to the defendant. The defendant's uncle, John Henry Wilson, told the discovering officer that the room belonged to the defendant. The shotgun was found inside a case.

According to Detective Jackson, when he saw the defendant later that evening, the defendant asked if the police had taken "his" gun during the search. See Tr. at 221. When the detective asked whether it was wise for the defendant to have a gun considering his prior felony conviction, the defendant then asserted that the gun belonged to his dead grandfather. The detective testified that when he saw the defendant again one week later, the defendant again requested the gun and again referred to it as "his." See id. at 223.

Special Agent Kenneth Bray of the Bureau of Alcohol, Tobacco, and Firearms began investigating the defendant's connection to the gun. Upon

learning of Agent Bray's activity, the defendant invited Agent Bray to the Dillon address, where he told the agent that the shotgun had belonged to his father, who died in 1994. The defendant told Agent Bray that the shotgun passed to his grandmother, who also lived at the Dillon address and who passed away in 1995. The defendant said that he then moved the shotgun to his bedroom. According to the defendant, he did this at the request of his aunts, who felt that the defendant's grandmother's possessions should be secured to prevent theft.

According to Agent Bray's testimony, Mr. Wilson stated that he had been living at both his girlfriend's house and the house on Dillon. Nevertheless, the defendant also said that he had exclusive possession of the bedroom in which the gun was found, referred to it as his room, and maintained his personal effects there.

On October 31, 1996, the district court entered a discovery order which required, among other things, that the government provide the defense with a written summary of the government's expected expert testimony, including the experts' opinions and the bases for those opinions, by November 8, 1996. Several days before trial, and after November 8 had passed, the defendant learned that the government planned to call an expert to identify the single fingerprint found on the gun as that of the defendant. The defendant also learned that the government planned to prove one of the elements of the crime--that the shotgun traveled in

interstate commerce--by having Agent Bray testify that the Browning was manufactured in Belgium and imported through St. Louis. The defendant moved in limine to exclude the testimony of these witnesses based on the government's violation of the discovery order. The district court denied the motion.

At trial, the government also introduced, over the defendant's objection, a report from the National Crime Information Center indicating that the shotgun was stolen. The government submitted this evidence to rebut the testimony of the defendant's two aunts and his stepmother, who claimed that the gun was a family heirloom.

The jury found the defendant guilty of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). At sentencing, the judge enhanced the defendant's sentence by two levels on the basis of its conclusion that the gun was stolen.

**Discussion**

The defendant appeals on five different grounds. He argues, first, that the evidence at trial was insufficient to support his conviction for possessing a weapon; second, that the court abused its discretion in refusing two of the defense's proposed jury instructions; third, that the report from the National Crime Information Center was hearsay not within any exception; fourth, that the trial court erred in admitting the testimony of Agent Bray and the fingerprint

expert; and fifth, that there were two errors in his sentencing. With regard to each challenge, we affirm the district court.

## I. The Possession Element

### A. Sufficiency of the Evidence

In determining whether there is sufficient evidence to support the jury's verdict, this court reviews the record de novo. See, e.g., United States v. Wilson, 107 F.3d 774, 778 (10th Cir. 1997). Evidence sufficiently supports a verdict if, when considered in the light most favorable to the government, it would allow a reasonable juror to find the defendant guilty beyond a reasonable doubt. See id. In evaluating the evidence under this standard, the court will not question a jury's credibility determinations or its conclusions about the weight of the evidence. See United States v. Johnson, 57 F.3d 968, 971 (10th Cir. 1995).

The defendant argues that the government did not prove, as 18 U.S.C. § 922(g)(1) requires it to do, that the defendant "knowingly possessed" the Browning shotgun. See United States v. Taylor, 113 F.3d 1136, 1144 (10th Cir. 1997) (listing knowing possession as one of three elements of the offense). The statute does not require a defendant to have had actual possession of a firearm; constructive possession is enough. See United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994). "A person has constructive possession when he or she knowingly holds ownership, dominion, or control over the object and the premises

where it was found." Id. at 549. If a defendant controls part of a premises, such as a bedroom, rather than an entire premises, a fact-finder can infer that the defendant constructively possessed a firearm found in that room. See United States v. Owens, 70 F.3d 1118, 1127 (10th Cir. 1995) (finding sufficient evidence of possession where police found gun in bedroom that defendant did not share).

In this case, the government put forth undisputed evidence that the defendant, and only the defendant, used the bedroom in which the police discovered the gun. That fact alone satisfies the minimal evidentiary requirement for constructive possession under Owens. The other evidence in this case made the factual basis upon which the jury found constructive possession even more ample. Detective Jackson, for instance, testified that the defendant referred to the gun as "his" on three different occasions. Also, although the gun was kept in a case and the defendant contended that he only moved it from one room to the next, one of his fingerprints was found on it. Under the applicable legal standard, the evidence presented in this case allowed a reasonable juror to find beyond a reasonable doubt that the defendant knowingly possessed the shotgun.

**B. The Jury Instructions**

We review a court's refusal to give a particular jury instruction for an abuse of discretion. See United States v. Lee, 54 F.3d 1534, 1536 (10th Cir. 1995). A trial court does not abuse its discretion in issuing jury instructions if the

instructions that it gives fairly state the governing law and provide the jury with an understanding of the issues and applicable standards. United States v. DeSoto, 950 F.2d 626, 631 (10th Cir. 1991).

The disputed instructions concern constructive possession. We noted above that a defendant has constructive possession of an object if he has exclusive possession of the premises--or part of a premises--in which the object is found. See Owens, 70 F.3d at 1127. When a defendant has joint, rather than exclusive, possession of a premises with another, however, the government must also prove a "nexus" between the object and the defendant strong enough to show that the defendant had knowledge of and access to the weapon or contraband. See Taylor, 113 F.3d at 1145.

The district court's instructions 23 and 24 read, in pertinent part:

[Number 23] [P]ossession is constructive when a person does not have actual possession of the object but knowingly holds ownership, dominion, or control over the object and the premises where it is found.
. . .
[Number 24] Where a defendant jointly occupies or shares a premises (such as a dwelling, house or building) constructive possession may be shown by direct evidence . . . or by circumstantial evidence, which establishes beyond a reasonable doubt that the defendant had knowledge that the firearm(s) was contained in the premises and the defendant had the ability to access the firearm(s).

Vol. 2, Tab 41. The defendant's proposed instructions 33 and 34 read, in pertinent part:

[Number 33] Where the defendant jointly occupied a dwelling or was present when a firearm is found, the government must prove beyond a reasonable doubt that there is a connection or nexus between the defendant and the firearm. Mere proximity of the defendant Lonnie Eugene Wilson to the firearm is not enough to establish that he actually or constructively possessed the firearm.

[Number 34] The fact that Lonnie Eugene Wilson touched the firearm is not, in itself, enough to prove actual or constructive possession.

Vol. 1, Tab 31. The first sentence of the defendant's proposed instruction 33 does not add anything to the district court's instructions. Although it uses the word "nexus," in Taylor we equated the nexus requirement with a finding of knowledge of and access to the weapon. See Taylor, 113 F.3d at 1145. The district court's instructions require both knowledge and access to the weapon.

The defendant's proposed instruction 34 and the second sentence of the proposed instruction 33 are very similar to each other. The district court refused these instructions, but did inform the jury in instruction 23 that the government was required to show ownership, dominion, or control of the gun. Furthermore, it gave the jury a fair summary of the evidentiary requirements in a case involving constructive possession. These instructions sufficiently covered the issues presented. Therefore, we find no abuse of discretion with regard to the jury instructions. See United

- 8 -

States v. Pena, 930 F.2d 1486, 1492 (10th Cir. 1991) ("In deciding whether the judge properly exercised his discretion, we must examine the other instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence.").

## II. National Crime Information Center Evidence

The defendant next argues that the trial court erred by admitting evidence of a National Crime Information Center record indicating that the Browning shotgun had been stolen from a Louisiana man in 1987. The defendant argues that the record was hearsay evidence not admissible under any exception. During the trial, the defendant's aunts and his mother testified that the gun had been a family heirloom. The government offered the NCIC report to rebut that testimony. The NCIC report was offered to prove the truth of the matter asserted in it. Thus, it is hearsay evidence. See Fed. R. Evid. 801(c).

It is unnecessary to determine whether the NCIC report falls into the business records exception to the hearsay rule, however, because even if the trial court erred in admitting the record, that error was harmless. Where a party objects to evidence on hearsay grounds, we apply the harmless error standard from Kotteakos v. Untied States, 328 U.S. 750, 765 (1946). See United States v. Tome, 61 F.3d 1446, 1455 (10th Cir.

1995).  "[W]e must discern whether the statement, in light of the whole record, substantially influenced the outcome of the trial, or whether we are left in grave doubt as to whether it had such an effect."  Id. (citations and internal quotation marks omitted).

The only contested issue at trial was whether the defendant possessed the Browning shotgun.  Uncontroverted evidence showed that the gun first arrived at the Dillon Avenue home after the death of the defendant's father.  The dispute revolved around the defendant's relationship to the gun after it arrived at Dillon Avenue, and especially after the death of his grandmother in 1995.  How the gun came to Dillon Avenue--as a family heirloom or a stolen good--did not have any bearing on the question of whether the defendant "possessed" the gun for the purpose of the statute.  The trial court's instructions, in fact, recognized the irrelevancy of the evidence.  The court told the jury that the evidence "is not offered and cannot be considered by you as evidence of guilt by this defendant for the crime for which he now stands tried."  Tr. at 404.

The evidence merely contradicted the account of the aunts and stepmother regarding a peripheral and insignificant issue, and therefore did not impact the verdict.  Cf. Cannady v. United States, 351 F.2d 796, 798 (D.C. Cir. 1965 ) ("If the hearsay evidence had been used to impeach

appellant's credibility by showing a contradiction on some insignificant matter, we would hesitate to reverse his conviction.").[1]  The evidence of guilt at trial, especially the testimony of Agent Bray and Detective Jackson, was substantial.  Because the NCIC report concerned an insignificant issue in the trial and was not relevant to the issue of whether the defendant possessed the gun, and because there was ample independent evidence in support of the jury's verdict, there is no risk that the NCIC evidence substantially influenced the trial.

**III.  Expert Testimony**

Mr. Wilson contends that the district court should not have allowed the expert testimony of either Agent Bray or fingerprint expert because the government did not provide written notice to the defendant of their names and expected testimony, as required by the court's discovery order.  We review a trial court's decision to admit or exclude expert testimony for abuse of discretion, and we will not reverse a trial court's exercise of discretion absent a showing that the trial court's decision was prejudicial to the defendant's substantial rights.  See Klein v. Grynberg, 44 F.3d 1497,

---

[1]We recognize that it is improper to admit extrinsic evidence in order to impeach a witness on a collateral matter.  See United States v. Mulinelli-Navas, 111 F.3d 983, 988 (1st Cir. 1997).  As noted, however, the district court admitted the evidence for its truth. Furthermore, the defendant did not object to the introduction of the evidence on this ground.  Thus, we do not consider how that rule of law might apply to this case.

1505 (10th Cir.), cert. denied 116 S. Ct. 58 (1995). We conclude that the district court did not abuse its discretion.

Agent Bray testified that the Browning shotgun was manufactured in Belgium and sent to St. Louis. This testimony tended to prove that the gun had traveled across state lines, as required by 18 U.S.C. §§ 922(g)(1) and 924(a)(2). This testimony did not prejudice the defendant because three of his own witnesses made statements that also demonstrated that the shotgun had traveled interstate. See Tr. at 311-12 (testimony of Lenore Cox); id. at 329-31 (testimony of Dollie Scruggs); id. at 344 (testimony of Frankye Hunt).

The defendant has also failed to show that the admission of the fingerprint expert's testimony prejudiced him. Normally, a party cannot show prejudice resulting from surprise unless the party requested a continuance. See Marino v. Otis Engineering Corp. 839 F.2d 1404, 1411 (10th Cir. 1988). Here, the defendant did not request a continuance to prepare for the testimony of the fingerprint expert. Furthermore, the defendant does not detail the nature of the prejudice against him; he asserts only that the late admission of the evidence "deprived him of an adequate opportunity to challenge [the] evidence." Appellant's Br. at 18. This type of conclusory allegation of prejudice is an insufficient basis

upon which to order a new trial. See Greenwood v. McDonough Power Equip., Inc., 731 F.2d 690, 697 (10th Cir. 1984) (noting that the objecting parties did not "display[] the manner in which [the expert's] observation prejudiced them or what steps they may have pursued to cure the alleged prejudice.").

## IV. Sentencing

The trial court enhanced the defendant's sentence under United States Sentencing Guideline § 2K2.1(b)(4) for possessing a stolen firearm and also refused to grant a downward departure under § 3E1.1 for acceptance of responsibility. The defendant contends that the trial court erred in both determinations. We review the trial court's decisions for clear error. See United States v. Rowlett, 23 F.3d 300, 303 (10th Cir. 1994) (applying § 2K2.1(b)(4)); United States v. Robertson, 45 F.3d 1423, 1449 (10th Cir.) (applying § 3E1.1), cert. denied, 116 S. Ct. 133 (1995).

The sentencing guidelines provide for a two-level enhancement "[i]f any firearm was stolen." U.S.S.G. § 2K2.1(b)(4). During the defendant's sentencing hearing, the government showed that the gun had been stolen by presenting a police report from Caddo Parish, Louisiana. That report had served as the basis for the NCIC evidence admitted at trial.

Because the Federal Rules of Evidence do not apply at sentencing

hearings, hearsay statements may be used at sentencing as long as they possess some "minimum indicia of reliability." United States v. Browning, 61 F.3d 752, 754-55 (10th Cir. 1990). The defendant contends that the police report does not have a minimum indicia of reliability because it is merely a "piece of paper" and does not definitively prove that the gun was actually stolen. There is, however, nothing in this record to suggest that the report is untrustworthy. That being the case, we affirm the finding of the district court. See Browning, 61 F.3d at 755 (finding evidence admissible where there was no showing of unreliability).

Regarding the district court's refusal to grant a downward departure for acceptance of responsibility, we have previously held, "[A] defendant who requires the government to make its proof by going to trial generally will not be allowed a two-level departure for acceptance of responsibility." United States v. Reed, 114 F.3d 1053, 1058 (10th Cir.), cert. denied, 118 S. C.t 316 (1997). If a defendant goes to trial only to assert and preserve issues that do not relate to factual guilt, however, he may still be entitled to the reduction. See U.S.S.G. § 3E1.1 n. 2. In this case, the defendant disputed his factual guilt. He denied Detective Jackson's testimony that the defendant stated that the gun was "his," and denied the testimony of Agent Bray regarding the defendant's exclusive authority over the

bedroom in which the gun was found. Thus, the district court did not err in refusing to grant the two-level downward departure for acceptance of responsibility.

## Conclusion

Having found that the evidence was sufficient to convict the defendant of possession of a firearm, that the jury instruction related to that offense fairly described the law, the improper admission of the hearsay evidence, if any, was harmless, that no prejudice resulted from the expert testimony, and that the district court made no errors at sentencing, we affirm the conviction and sentence of the defendant.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge