### Rufus E. ADAMS, Jr., Appellant,

### v.

### UNITED STATES, Appellee.

### No. 6589.

District of Columbia Court of Appeals.

Argued Jan. 10, 1973.

Decided March 20, 1973.

Rehearing en Banc Denied May 2, 1973.

4. *See* note 1, *supra.*

Frederick H. Weisberg, Brooklyn, N. Y., with whom Douglas C. Dodge, appointed by this court, was on the brief, for appellant.

Douglass J. McCollum, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Richard N. Stuckey, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, NEBEKER and PAIR, Associate Judges.

[1]. D.C.Code 1967, § 22–502.

NEBEKER, Associate Judge:

This appeal from convictions for assault with a dangerous weapon[1] and carrying a dangerous weapon[2] presents questions relating to identifications flowing from a photograph of appellant taken by the police allegedly in violation of appellant's Fourth Amendment rights, and pretrial identifications allegedly so impermissibly suggestive as to violate appellant's Fifth Amendment due process rights. After viewing the record and briefs, and hearing argument, we find no error and affirm.

On March 22, 1971, while Mrs. Evangeline West was walking near her home, she was approached from the rear by appellant who grabbed her by the neck and placed a knife at her throat. Appellant forced her to walk down the block. As they walked, Mrs. West was able to feel the hair of his beard and by turning her eyes in his direction she was able to see his face. She was again able to closely observe his face, features, and clothing when they stopped under a street light. Mrs. West broke away for a short time; however, when she slipped on a wet embankment, appellant was able to catch her. As she struggled to free herself, appellant cut her several times with his knife. During this period she was again able to fully observe appellant's features. He then fled.

When interviewed by the police at the hospital the next day, Mrs. West gave a description of her assailant. A police artist also visited her at the hospital and, from her detailed description of facial features, prepared a composite drawing.

On April 6, 1971, two detectives with a reproduction of the composite drawing and the description given by Mrs. West were searching the area of the crime while investigating a series of assaults in that area. Within a block of the attack on Mrs. West the detectives observed appellant, whose facial features, physical characteristics and clothing matched the description and, in

[2]. D.C.Code 1967, § 22–3204.

their view, the composite drawing.[3] The officers testified that they approached appellant, identified themselves, explained why they stopped him, and fully advised him of his rights. They told him they would like to take some photographs of him and asked if he would accompany them to the police station. Appellant consented but stated he wanted to be returned to that block. He was then taken to the station, photographed and returned thirty minutes later.

While hospitalized, Mrs. West viewed numerous photographs from which she picked two that were the "closest to him". On April 7, she was shown a group of pictures which contained a 1965 photograph of the appellant.[4] In this photograph, appellant did not have a beard, a bush hair style, or a mustache. Mrs. West passed over it without comment. On April 9, Mrs. West was shown another group of photographs to include the photograph of appellant taken on April 6. Mrs. West selected appellant's picture saying, "It looks like him. That is him. It looks a lot like him. I'd like to see him in person."

As a result of this identification, appellant was arrested and a search warrant issued. The search of his home uncovered a yellow knife and clothing which Mrs. West later testified were similar to the knife and clothing which her assailant possessed.

Appellant was identified by Mrs. West in a lineup on April 15, 1971, at which time she stated, "Number three is the closest. He had more hair." Again on August 3, 1971, she identified him in a second lineup stating, "Number 14."

Appellant contends (1) that even though the issue was not raised in the trial

court,[5] it was plain error for the trial court not to suppress identifications flowing from the photographs taken of appellant when he was taken to the police station without probable cause in violation of his Fourth Amendment rights; and (2) that the pretrial identifications were so impermissibly suggestive by the frequency of being shown appellant's photograph and by viewing appellant in the lineups as to violate appellant's Fifth Amendment rights.

The decision whether a court will recognize plain error is a discretionary one. Washington v. United States, 134 U.S.App.D.C. 223, 414 F.2d 1119 (1969); Hill v. United States, D.C.App., 280 A.2d 925 (1971). Absent a clear showing of a miscarriage of justice, courts are not disposed to notice alleged errors which are raised for the first time upon appeal. Harris v. United States, 112 U.S.App.D.C. 100, 299 F.2d 931 (1962). The rationale for requiring a specific objection is to allow the trial court judge an opportunity to correct the mistake as well as to allow the prosecution an opportunity to present evidence on the issue raised. United States v. Indiviglio, 352 F.2d 276 (2d Cir. 1965); Hill v. United States, supra. In exercising this discretion the courts have looked to all the circumstances of the case in order to determine whether there is a probability that there has been a miscarriage of justice. In Washington, where no error was raised in the trial court, the court stated:

While information subsequently obtained cannot fill the gap if probable cause is lacking, and so it is not, strictly speaking, relevant that [later discovered evidence corroborated the testimony], the circumstance obviously has a bearing on

---

3. The trial judge also found that the composite drawing was "very close" to appellant's 1971 photograph.

4. At this time the officer who showed Mrs. West the pictures was not aware of the fact that the photographs had been taken of appellant.

5. We have noted appellant's contentions that since a motion to suppress based

upon Fifth Amendment grounds was filed in the trial court he has therefore preserved his Fourth Amendment grounds. We find this argument meritless. To do otherwise, we would allow defendants to preserve one point by raising another not factually related. Moreover, it would deprive the government the opportunity to present the appropriate evidence to oppose the motion.

the possibility of miscarriage of justice and can be taken into account in the exercise of our discretion whether to invoke the plain error rule . . . . [*Id.*, 134 U.S.App.D.C. at 226, 414 F.2d at 1122.]

■ It is therefore appropriate for us to view the evidence as a whole in resolving this unpreserved issue. The identification of appellant's photograph, the two lineup identifications, the composite drawing, his presence in the area of the attack, the two in-court identifications, and the clothing recovered from appellant's home leave "so small a probability that probable cause was lacking in this case, [that] our discretion to consider plain error would not be wisely exercised by entertaining [the] unraised issue." *Id.* We refuse to do so.

■ Appellant also argues, as he did at trial, that the photographic displays and lineups were impermissibly suggestive. We have made an independent review of the photographs used and the lineup photographs and sustain the finding of the trial judge that they were not so suggestive as to fall under the Fifth Amendment. As to the use of the 1965 photograph of appellant, it is easy to understand why complainant did not identify him from this photograph inasmuch as his appearance was grossly different. In the 1965 photograph, appellant lacked a beard, mustache, and bush hair style. Also, to argue that seeing this photograph prior to seeing the more recent photograph would be suggestive to the complainant is not reasonable in view of the vast difference in appellant's appearance in the two photographs.

■ We have also considered appellant's other contentions relating to suggestiveness and find them to be without merit. The contention that the first lineup followed too closely the photo identification is not valid since there is nothing suggestive in a prompt lineup. United States v. Hines, 147 U.S.App.D.C. 249, 455 F.2d 1317 (1971), cert. denied, 406 U.S. 975, 92

S.Ct. 2427, 32 L.Ed.2d 675 (1972). Also, appellant's contentions as to the hesitancy of the complainant in making an identification may merely indicate that she was attempting a fair appraisal and, in any event, is a matter of credibility to be left to the trier of facts.

The judgment is

Affirmed.